UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC J. COPENHAVER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL, INC., a corporation, BAXTER HEALTHCARE CORPORATION, a company, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, a company, JOHN DOE I-X,<br><br>Defendants. | Case No. 1:19-cv-00079-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are cross-motions for summary judgment relating to Defendants Baxter International, Inc.'s and Baxter Healthcare Corporation's termination of Plaintiff Eric Copenhaver's employment. Copenhaver filed this action alleging a violation of Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, by all Defendants, and a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, by the two Baxter Defendants. In a prior memorandum decision and order limited to the ERISA claim, the Court granted partial summary judgment to Copenhaver and denied Defendants' cross-motion. (Dkt. 41.)

**MEMORANDUM DECISION AND ORDER - 1**

The parties have now filed cross-motions limited to Copenhaver's ADA claim asserted against Baxter International, Inc. and Baxter Healthcare Corporation ("Baxter"). Baxter seeks dismissal of Copenhaver's ADA claim in its entirety, while Copenhaver seeks summary judgment limited to the issue of liability.

The Court conducted a video hearing on December 8, 2020. After careful consideration of the parties' arguments, the record, and the applicable legal authorities, the Court will deny the motions, as discussed below.

## BACKGROUND

Copenhaver worked for Baxter International, Inc. in the position of Service Specialist. The position required Copenhaver to, among other duties, deliver and pick up products for kidney dialysis patients and dialysis clinics utilizing a Class B CDL vehicle. Baxter Service Specialist Job Description, Dkt. 42-4 at 38 – 40. According to the job description, the position required driving a CDL vehicle, and the physical capability to hand carry stock. This involved heavy physical work with frequent lifting, and the ability to carry objects weighing 25-37 pounds or more on a repetitive basis, as follows:

> An average delivery consists of 30 cases, at 824 pounds. Each case is lifted from the floor of the truck, or stack, (possibly chest high), and placed on a hand truck, wheeled into a patient's home, then lifted off the hand truck and placed on the floor, or lifted onto an existing stack. In a warehouse 15%. In truck driving 40%. In patients home making deliveries 45%. Hazards include…Pushing and pulling a hand truck loaded (total weight of 165-200 lbs). Some are deadlifts up stairs, into basements, attics, or into a garage. Often requires pulling out an aluminum ramp or liftgate from the truck. Manual lifting of cartons.

Essential job functions were broken down as percentages:

**MEMORANDUM DECISION AND ORDER - 2**

- Driving a CDL straight truck 35-45%
- Delivering Supplies 30%
- Rotating Supplies 05%
- Inventory Checks 03%
- Loading trucks-varies with location 05%
- Vehicle Inspections 02%
- Paperwork/computer entry 05%
- Picking up supplies for return to warehouse 05%

Copenhaver was one of two Baxter employees – both service specialists – in the state of Idaho. Decl. of Ken Lober ¶ 4. (Dkt. 42-2 at 2.) Copenhaver and his co-worker were responsible for delivering Baxter's medical products to critically ill patients throughout Idaho. *Id.* Baxter considers the delivery of supplies to patients to be a one-person job. *Id.* ¶ 6.

On July 22, 2017, Copenhaver submitted a claim for short term disability (STD) benefits alleging disability due to chronic pain in his shoulders limiting his range of motion and impairing his ability to lift and carry. AR 91, 407, 595.[1] Copenhaver was granted a leave of absence at that time. Lober Decl. ¶ 8. (Dkt. 42-2 at 3.) Baxter hired a temporary leased driver from a staffing agency to fill Copenhaver's job as a service specialist at a rate of $40 – $45 per hour, as opposed to the $25 per hour wage paid to Copenhaver. Lober Decl. ¶ 9. (Dkt. 42-2 at 3.)

Liberty approved Copenhaver's request for STD benefits, and he began receiving benefits as of August 1, 2017. AR 132. Liberty extended benefits through December 4,

---

[1] The administrative record related to the ERISA claim is at Docket 23-3 – 23-7. It was cited to extensively in the Court's July 27, 2020 memorandum decision and order on the first motion to dismiss. (Dkt. 41.)

**MEMORANDUM DECISION AND ORDER - 3**

2017, at which time Liberty denied further extension of Copenhaver's STD benefits. AR 487, 397 - 400.

On or about December 6, 2017,[2] Copenhaver telephoned Scot Emil, Baxter's Human Resources representative, concerning Copenhaver's appeal of Liberty's denial of further STD benefits. Emil Depo. at 85 – 87. (Dkt. 42-4 at 65 – 66.) The substance of this telephone conversation is disputed. After the telephone call, Copenhaver followed up with Emil via email on December 6, 2017, requesting a copy of the job description for the Baxter Service Specialist position to facilitate his appeal of Liberty's decision to deny an extension of STD benefits. (Dkt. 44-3 at 30.) Emil responded to Copenhaver's email on December 8, 2017, as follows: "[a]s we discussed, please continue to work with Liberty Mutual on any appeals and follow their process….If needed, I will send you some information to complete with your physician regarding evaluating a possible reasonable accommodation request." (Dkt. 44-3 at 30.) Baxter extended Copenhaver's leave of absence at that time.[3]

Copenhaver appealed Liberty's termination of benefits decision on January 25, 2018, and on March 9, 2018, Liberty affirmed its denial of continued benefits. AR 407 – 411.

On March 19, 2018, Copenhaver requested a return to work with accommodation to light duty. (*See* Dkt. 42-4 at 42.) ("Eric called…He said he thought he had improved

---

[2] The exact date of this telephone call is not clear from the record. However, neither party disputes the call occurred prior to an email Copenhaver sent later on December 6, 2017.

[3] It is not clear from the record whether this period of additional leave was for a finite period. It appears from the record that the additional leave was granted "during the time [Copenhaver] was appealing [his] claim for short-term disability" benefits. (Dkt. 42-4.)

**MEMORANDUM DECISION AND ORDER  - 4**

enough to 'come back to work light duty.'"). Copenhaver indicated also that he would need to renew his DOT medical card before he could begin driving again, as it had expired while he was on leave. (Dkt. 44-3 at 34.) Copenhaver suggested that he be permitted to return to his position as a Service Specialist performing the driving responsibilities only, while another individual handled the lifting requirements of the position. Lober Decl. ¶ 11. (Dkt. 42-2 at 4.)

Copenhaver provided Baxter with his most recent medical treatment notes, dated February 8, 2018, which explained his current condition and physical restrictions. (Dkt. 44-3 at 34 – 36.) These restrictions included no lifting overhead or chest high lifting, and no repetitive lifting greater than 20 lbs. (Dkt. 44-3 at 36.) Copenhaver's physician recorded that, "[a] complete functional capacity exam] may be helpful to fully evaluate his abilities….he is not able to perform the substantial and material duties of his job because of his pain and decreased bilateral shoulder range of motion as indicated above." (Dkt. 44-3 at 36.) The treatment note indicated also that "the natural history of [the healing] process takes 18-24 months total." (Dkt. 44-3 at 36.)

Thereafter, on March 20, 2018, Debra Bush, a Baxter Occupational Health Nurse, Scott Emil, Baxter's Human Resources representative, and Ken Lober, Baxter's Director of U.S. Supply Chain, met to discuss Copenhaver's return to work request and potential options for accommodation. Lober Decl. ¶ 14. (Dkt. 42-2 at 4.)

One day later, on March 21, 2018, Baxter decided to terminate Copenhaver's employment effective March 26, 2018, stating in the termination letter: "after evaluation of your light duty restrictions we would not be able to accommodate the restrictions. We

**MEMORANDUM DECISION AND ORDER - 5**

also understand that you do not have a required DOT medical card which is a requirement to do the essential functions of the Service Specialist/Driver position." (Dkt 44-3 at 38.) Baxter's letter further stated, "[i]t is not reasonable for Baxter to continue to leave your position open at this time."

In its prior memorandum decision, the Court determined that Copenhaver could not perform the material functions of his job as a service specialist based upon the reports of Copenhaver's treatment providers indicating that he could not lift objects 25 – 37 pounds or more on a repetitive basis, and that these limitations existed in July of 2017 and in March of 2018.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable

**MEMORANDUM DECISION AND ORDER  - 6**

inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a verdict in his or her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file," that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

## ANALYSIS

Count II of Copenhaver's complaint asserts that, upon Copenhaver's request in March of 2018 for a reasonable accommodation to enable him to return to work, Baxter

both discriminated and retaliated against Copenhaver in violation of the ADA. Baxter asks the Court to enter summary judgment in its favor on the ADA claim, because: (1) Copenhaver was not a qualified individual able to perform the essential functions of his job; (2) Baxter terminated Copenhaver's employment for a legitimate, non-retaliatory reason; and (3) Copenhaver failed to mitigate his damages. In response, Copenhaver argues that the undisputed facts establish: (1) he was a qualified individual under the ADA; (2) Baxter retaliated against him for engaging in a protective activity; and (3) he mitigated his damages. Because genuine issues of material fact preclude summary judgment, both motions will be denied.

## 1.    Discrimination Under the ADA

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case for discrimination under the ADA, a plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the statute; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he holds or seeks; and, (3) that he suffered an adverse employment action because of his disability." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000); *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999); *Harris v. Treasure Canyon Calcuim Co.*, 132 F. Supp. 3d 1228, 1236 (D. Idaho 2015).

**MEMORANDUM DECISION AND ORDER  - 8**

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action under the *McDonnell Douglas* burden-shifting scheme. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n. 3 (2003). If the employer meets this burden, the burden shifts back to the plaintiff to show that the given reason is merely pretext for discriminatory motives. *Id*.

Baxter does not dispute that Copenhaver is disabled within the meaning of the ADA for purposes of its motion. Instead, the dispute here concerns whether Copenhaver was qualified, with or without reasonable accommodation, to return to work in March of 2018. Copenhaver makes two assertions. First, he contends he was a qualified individual because he could have either fulfilled the essential functions of his job as a Service Specialist with reasonable accommodation, or fulfilled the essential functions of other positions available at Baxter that he desired, without accommodation. Second, Copenhaver asserts Baxter failed to fulfill its obligation to engage in an interactive process to attempt to identify a reasonable accommodation that would allow him to return to work. Baxter, in turn, contends the accommodations suggested and that it considered during the interactive process would have imposed an undue hardship. Each of these contentions are disputed and cannot be decided by the Court upon summary judgment.

### Essential Function

The ADA's definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability...unless such covered entity can demonstrate that the

**MEMORANDUM DECISION AND ORDER - 9**

accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A); *Dark v. Curry Cty.*, 451 F.3d 1078, 1088 (9th Cir. 2006). A "qualified individual" is an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added). Copenhaver bears the burden of proving that he is "qualified." *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006); *Hutton v. Elf Atochem North America, Inc.*, 273 F.3d 884, 892 (9th Cir. 2001).

The term "essential functions" refers to the "fundamental job duties of the employment position," and does not "include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be considered "essential" for various reasons. *See id*. § 1630.2(n)(2)(i)—(iii). The statute provides that "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2(n)(3) (requiring consideration of the amount of time spent performing the function).

Baxter lists the "essential duties" of Copenhaver's position in a September 1995 document entitled "Job Description." These responsibilities included driving a truck and lifting/delivering supplies to patients. (Dkt. 42-4 at 38.) Copenhaver does not dispute that lifting/delivering supplies is an essential function of the job of Service Specialist. *See* Copenhaver Depo. at 71 – 73. (Dkt. 42-4 at 20.) And, the record contains evidence that,

**MEMORANDUM DECISION AND ORDER  - 10**

as of March 19, 2018, Copenhaver could not perform the lifting functions required of person working in a Service Specialist position. *Id.*

Copenhaver testified also that, as of March 2018, he could not have performed the driving aspects of the Service Specialist job because he was still taking opioids, and he had let his DOT medical card lapse. Copenhaver Depo. at 74 – 75. (Dkt. 42-4 at 21.) This was one of the reasons underlying the decision to terminate Copenhaver's employment expressed in the March 21, 2018 letter. (Dkt. 42-4 at 45.) However, Copenhaver testified he ceased taking opioids in "late April or early May" of 2018. Copenhaver Depo. at 74 – 75. (Dkt. 42-4 at 21.) And, Copenhaver stated in his affidavit that renewing his DOT medical card consisted of a single appointment with a certified healthcare provider, with the card being issued immediately thereafter. Aff. of Copenhaver ¶ 29. (Dkt. 44-3 at 9.) Thus, on the record before the Court, the undisputed evidence indicates Copenhaver could not have returned to work on March 19, 2018, in his position as Service Specialist without an accommodation.

### *Reasonable Accommodation*

To avoid summary judgment, Copenhaver "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002). "Reasonable accommodations" may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). It is up to the employee to request a reasonable accommodation, although the request need not be made in writing; no specific words are needed; and it is enough that the employee provides the

employer with information that, under the circumstances, the employer "can be fairly said to know of both the disability and desire for an accommodation." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 313 (3rd Cir. 1999).

A request for an accommodation by an employee triggers the "interactive process" under the ADA. *Humphrey v. Memorial Hospitals Assoc.*, 239 F.3d 1128 (9th Cir. 2001) ("Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."). The interactive process requires the employer to discuss options with the employee to identify and implement appropriate reasonable accommodations. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 (9th Cir. 2000) *vacated sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).[4]

The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114–15 (9th Cir. 2000).[5] The shared goal is to identify an

---

[4] The United States Supreme Court vacated the judgment on the grounds that seniority rules may provide a reason to deny a requested accommodation.

[5] The EEOC outlines four steps critical to the interactive process:

> (1) Analyze the particular job involved and determine its purpose and essential functions;
> (2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;
> (3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position and;
> (4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

**MEMORANDUM DECISION AND ORDER - 12**

accommodation that allows the employee to perform the job effectively. Both sides must communicate directly and exchange essential information, and neither side can delay or obstruct the process. *Id.* (citing *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc*., 180 F.3d 1154, 1172 (10th Cir. 1999) ("The interactive process includes good-faith communications between the employer and employee."); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.").

Employers should "meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 317 (3rd Cir. 1999).

Upon summary judgment, once the employee has made a showing of an accommodation that appears reasonable on its face, the employer must show "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). "Undue hardship" is an employer's affirmative defense, proof of which requires a detailed showing that the proposed accommodation would "requir[e] significant difficulty or

---

29 C.F.R. Pt. 1630, App. § 1630.9.

expense" in light of specific enumerated statutory factors. *Lovejoy-Wilson v. NOCO Motor Fuel, Inc*., 263 F.3d 208, 221 (2nd Cir. 2001); *see* 42 U.S.C. § 12111(10)(A)-(B) (identifying relevant factors to include (1) the employer's type of operation, including its composition, structure, and the functions of its workforce; (2) the employer's overall financial resources; (3) the financial resources involved in the provision of the reasonable accommodation; and (4) the impact of such accommodation upon the employer's operation)." *Rodal v. Anesthesia Group of Onondaga, P.C.* 369 F.3d 113, 121-122 (2nd Cir. 2004).

Baxter does not contest that, in March of 2018, Copenhaver "reached out to Baxter about the possibility of returning to work," and there is no dispute that Baxter was aware of Copenhaver's limitations with regard to lifting. Ken Lober Decl. ¶ 11. (Dkt. 42-2 at 4.) According to Ken Lober, Baxter's Director of U.S. Supply Chain, Copenhaver requested that he be allowed to perform only the driving responsibilities of the Service Specialist position while another individual handled the lifting requirements. Lober Decl. ¶ 11. (Dkt. 42-2 at 4.) Baxter therefore bore an affirmative obligation to engage in the interactive process to identify, if possible, a reasonable accommodation that would permit Copenhaver to return to work and maintain his employment.

Summary judgment is available to the employer only where there is no genuine dispute that the employer engaged in the interactive process in good faith. *Morton v. United Parcel Serv., Inc*., 272 F.3d 1249, 1256 (9th Cir. 2001).[6] If the employer did not

---

[6] *Morton* was overruled on other grounds by *Bates v. United Parcel Serv., Inc*., 511 F.3d 974 (9th Cir. 2007). *Bates* vacated *Morton's* application of the "business necessity" test.

**MEMORANDUM DECISION AND ORDER  - 14**

engage in any such process, summary judgment is available to the employer only if a reasonable finder of fact can conclude that "there would in any event have been no reasonable accommodation available." *Morton*, 272 F.3d at 1256 (citation omitted). Ordinarily, whether an accommodation would impose an undue hardship on the employer is a factual question rarely suitable for resolution on summary judgment. *Morton*, 272 F.3d at 1256; *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001). An employer is under a continuing duty to offer a reasonable accommodation and, if after offering an accommodation that later is unsuccessful, the employer is under an obligation to explore with the employee the possibility of other accommodations. *Humphrey*, 239 F.3d at 1139.

In light of these considerations, the record before the Court is insufficient to warrant summary judgment for either party. With respect to Copenhaver's claim that Baxter failed to engage in the interactive process as a matter of law, the facts before the Court indicate Baxter initially granted a five month leave of absence. Copenhaver spoke to Scott Emil on or about December 6, 2017, upon the termination of Copenhaver's STD benefits, about his options at that time. Although the substance of this telephone call is disputed, there is no dispute Copenhaver was granted another period of leave to allow him to pursue an appeal of Liberty's decision to deny further STD benefits.

On March 19, 2018, Copenhaver spoke with Debra Bush and others at Baxter about his desire to return to work. A meeting occurred thereafter between Ken Lober, Debra Bush, and Scott Emil to discuss Copenhaver's request to return to work in a light duty position, and other possible accommodations. Lober Decl., ¶¶ 11 – 21; Emil Depo.

**MEMORANDUM DECISION AND ORDER - 15**

at 89 – 95; Email correspondence. (Dkt. 42-2; Dkt 42-4 at 67 – 68; and Dkt. 42-4 at 41 –
42.) Baxter contends these facts establish the company fulfilled its obligation to engage in
the interactive process, because Baxter allegedly considered several options, in addition
to the option Copenhaver suggested, to allow him to return to work. Lober Decl. ¶¶ 17 –
21 (Dkt. 42-2 at 6 – 7) (stating the group discussed Copenhaver's accommodation request
to return as a driver, transfer to a vacant position, and an additional leave of absence).
Copenhaver disputes that the discussion was sufficient to fulfill Baxter's obligation to
engage in the interactive process. *See* Aff. of Copenhaver ¶ 35 (Dkt. 44-3 at 10) ("At no
point during my telephone conversations with Ms. Bush and Mr. Emil in March 2018 did
they mention the possibility of filling a different position with Baxter outside of Idaho. In
fact, there was hardly any discussion with me at all about any possibilities or options.").

The Court cannot conclude on the record before it that, as a matter of law, Baxter
failed to engage in the interactive process entirely, which precludes judgment in favor of
Copenhaver on the issue of liability. It will be for the jury to determine whether Baxter's
actions were sufficient. *See* 29 C.F.R. Pt. 1630, App. § 1630.9 (setting forth actions
comprising the interactive process).

### *Undue Hardship*

Next, Baxter asserts that the three accommodations it considered each would have
imposed an undue hardship. Baxter claims it considered Copenhaver's request that he be
allowed to perform only the driving responsibilities of the Service Specialist position and
have another individual handle the lifting requirements; a transfer to a vacant position
outside of Idaho; and an additional leave of absence. Lober Decl. ¶ 11 – 20. (Dkt. 42-2 at

**MEMORANDUM DECISION AND ORDER - 16**

5 – 7.) With respect to each of these possible accommodations, the facts are disputed whether Baxter could have accommodated Copenhaver without undue hardship. The Court discusses each possible accommodation in turn.

Regulations under the ADA provide that "job restructuring" may be a "reasonable accommodation" required of the employer. 29 C.F.R. § 1630.2(o)(2)(ii). The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees. *See* 29 C.F.R. Part 1630, App. ("An employer or other covered entity may restructure a job by reallocating or redistributing nonessential, marginal job functions."); *Dark*, 451 F.3d at 1089. For example, in *McGregor v. Nat'l Railroad Passenger Corp*., 185 F.3d 868 (9th Cir. 1999), the court held that the employee, a baggage handler, could not establish the existence of a reasonable accommodation when she requested that the employer eliminate the requirement that she handle baggage or provide her with help from other employees.

Copenhaver asserts he could have returned to his service specialist position as a driver, with another individual assisting with the lifting and delivery functions. But Baxter contends it expected its Service Specialists to perform all essential functions – it employed only two service specialists in Idaho, and the company considered the position a one-person job. Baxter therefore contends "splitting" the job is not reasonable and constitutes an undue hardship because it would have to pay two employees instead of one.

However, there is evidence that Baxter had allowed Copenhaver such an arrangement during a previous period of injury for six weeks. Copenhaver Depo. at 49.

**MEMORANDUM DECISION AND ORDER - 17**

(Dkt. 42-4 at 14.) Ken Lober stated in his declaration there was a nationwide shortage of qualified drivers in March of 2018, yet Copenhaver indicated he could perform the driving functions of his job once he renewed his DOT medical card. (Dkt. 42-2 at 3 – 4.) Copenhaver contends Baxter could have hired a temporary laborer at a lower wage than his wage to assist him on a temporary basis, until his condition improved to enable him to fulfill the lifting responsibilities of his position. *See also* (Dkt. 42-4 at 23.) There is evidence also that the financial impact of such an accommodation upon Baxter, a large fortune 500 employer, may have been finite, given Copenhaver's physician expected his condition to improve to the point he could perform all the lifting/delivery functions of the job.[7] The Court cannot resolve these conflicting facts and the inferences to be drawn from them upon summary judgment.

Turning to reassignment as a possible accommodation, Copenhaver is a qualified individual under the ADA if he can "perform the essential functions of a reassignment position, with or without reasonable accommodation, even if [he] cannot perform the essential functions of the current position." *Hutton*, 273 F.3d at 892; *see also* 42 U.S.C. § 12111(9) (noting that reasonable accommodation may include reassignment to a vacant position); *see also* EEOC guidelines, 29 C.F.R. Part 1630, App. (advising that reassignment is reasonable "if the position is vacant within a reasonable amount of time," which "should be determined in light of the totality of the circumstances"). In considering

---

[7] Baxter knew from Copenhaver's medical documentation that Copenhaver's condition involved an 18 to 24 month healing process. Lober Decl. ¶ 20. (Dkt. 42-2 at 6.) Copenhaver began his leave of absence in July of 2017, and testified that, looking back, he believes he would have been able to return to work in full capacity as of "Christmas 2018." Copenhaver Depo. at 95. (Dkt. 42-4 at 26.) Lober contends, however, that he understood the healing process "would be indefinite." Lober Decl. ¶ 20. (Dkt. 42-2 at 6.)

reassignment as a potentially reasonable accommodation, an employer must consider not only those contemporaneously available positions but also those that will become available within a reasonable period of time. *Dark*, 451 F.3d at 1089-90.

There is a genuine dispute of material fact as to whether Copenhaver could have been accommodated through reassignment. Baxter admits it had 20 open driver positions "at any given time" around the country due to a nationwide driver shortage. Lober Decl. ¶ 10. (Dkt. 42-2 at 4.)[8] Baxter claims it had difficulty retaining leased drivers due to high turnover, which is generally caused by the nationwide shortage of truck drivers experienced throughout the transportation industry. *Id.* ¶ 9, 10. (Dkt. 42-2 at 3.) The record reveals Copenhaver renewed his DOT card effective July 23, 2018. (Dkt. 44-3 at 40.) In addition to driving positions, Lober testified that, in March of 2018, there were other open positions at Baxter in locations outside of Idaho that Copenhaver would have been capable of fulfilling. Lober Depo. at 48. (Dkt. 44-4 at 97.)[9] Copenhaver testified he asked Jon Cousineau, Baxter's regional operations manager, in March of 2018, whether there was an open position available at Baxter's Dixon warehouse in Northern California. Copenhaver Depo. at 76. (Dkt. 42-4 at 21.)

But Scott Emil, Baxter's Human Resources representative, testified that he did not discuss alternative open positions at Baxter with Copenhaver after his request to return to work on March 19, 2018. Emil Depo. at 74. (Dkt. 44-4 at 87.)[10] Emil claims he relied

---

[8] It is not clear from the record whether these positions may have included lifting requirements.

[9] The record does not contain information describing or identifying these other open positions.

[10] Emil had a telephone conversation with Copenhaver on March 23, 2018, the day Copenhaver received the March 21, 2018 termination letter. Emil Depo. at 74 – 75. (Dkt. 44-4 at 87.)

MEMORANDUM DECISION AND ORDER - 19

upon his conversation with Copenhaver on December 6, 2017, during which he allegedly discussed transfers to positions outside of Idaho, and Copenhaver responded that, "he wasn't moving." Emil Depo. at 86. (Dkt. 42-4 at 66.) Lober stated Emil informed him during the meeting between the two of them and Debra Bush on March 20, 2018, that Copenhaver was not interested in transferring to positions outside of Idaho. Lober Decl. ¶ 19. (Dkt. 42-2 at 6.)

The primary reason Baxter advances for not considering a transfer of Copenhaver to an open position outside Idaho is Copenhaver's alleged statement to Emil in December of 2017 that he was not interested in relocating. Lober Decl. ¶ 19. (Dkt. 42-4 at 24.) But, Copenhaver does not recall making such a statement to Emil in December of 2017. Copenhaver Depo. at 88 – 89. (Dkt. 42-4 at 24.) Rather, Copenhaver testified during his deposition that it would have been difficult to relocate at that time. Copenhaver Depo. at 90 – 91. (Dkt. 42-4 at 25.) The record contains no written evidence documenting the substance of the December 2017 conversation between Emil and Copenhaver. (*See* email from Emil to Copenhaver, 12/08/2017, Dkt. 44-3 at 30.) Moreover, Copenhaver states that, in March of 2018, no one from Baxter offered him the option of filling an open

position outside of Idaho. Copenhaver Aff. ¶ 35. (Dkt. 44-3 at 10.)[11] Baxter presents no other evidence that reassigning Copenhaver to an open position outside of Idaho would have imposed an undue hardship on the company.  As such, the Court cannot resolve all of the disputed factual issues regarding the reasonableness of reassigning Copenhaver to a position in a location other than Idaho, including whether such an accommodation would have imposed an undue hardship.

Last, with respect to a continued leave of absence, the ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence. *Dudley v. Cal. Dept. of Transp.*, 213 F.3d 641, 642 (9th Cir. 2000) (citing *Nowak v. St. Rita Hight School*, 142 F.3d 999, 1004 (7th Cir. 1998)). However, an employee can establish he was "otherwise qualified" under the ADA if the employee can "demonstrate that any defined period of leave" would have allowed him to control or otherwise recover from his condition. *Id.* (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998)). For example, in *Dudley*, the court noted that the employee's "failure to specify a return date" was fatal to her claim that a reduced schedule or leave of absence constituted a reasonable accommodation.

---

[11] Baxter contends Copenhaver's assertion in his affidavit (Dkt. 44-3) that he would have been receptive to moving outside of Idaho to keep his employment contradicts his prior sworn deposition testimony, and should be stricken. "A litigant cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Hill v. River Run Homeowners Ass'n, Inc.*, 438 F.Supp.3d 1155, 1178 (D. Idaho 2020). Upon review of the record, including Copenhaver's deposition testimony, the Court finds the sham affidavit rule is not implicated and the Court therefore denies Baxter's request to strike Copenhaver's statement in his affidavit. Copenhaver testified he did not recall discussing relocation with Emil in December of 2017, and stated in his prior deposition only that, in December of 2017, it would have been difficult to relocate. Copenhaver's statements in his later affidavit concern his circumstances in March of 2018.

**MEMORANDUM DECISION AND ORDER  - 21**

In *Nunes*, the Ninth Circuit held that "[u]npaid medical leave may be a reasonable accommodation under the ADA.... Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *see also* 29 C.F.R. Part 1630, App. (stating that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir. 2001) (holding that an employee need not show that the proposed medical leave is "certain or even likely to be successful.")). Recovery time of unspecified duration may not be a reasonable accommodation primarily where the employee will not be able to return to his former position and cannot state when and under what conditions he could return to work at all. *Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106 (10th Cir. 1999).

There remains a genuine issue of material fact regarding whether granting further medical leave to Copenhaver would have posed an undue hardship. Baxter contends that the leave Copenhaver sought was indefinite. Lober Decl. ¶ 20. (Dkt. 42-2 at 6.) But, Baxter's statement is contradictory – Lober states he understood from Copenhaver's physician treatment notes that the healing process took a total of 18 – 24 months, and it may have been another 6 – 12 months before Copenhaver could be released to perform his lifting job functions. Lober Decl. ¶ 15. (Dkt. 42-2 at 4 – 5; *See also* Dkt. 42-4 at 44.) In other words, the leave was not necessarily "indefinite." And, Copenhaver asserts that, as a fortune 500 company, Baxter had sufficient financial resources to either continue to employ a leased driver while granting further unpaid leave, or consider a shorter leave

period and the hiring of a temporary worker to assist Copenhaver's return as a Service Specialist. The Court cannot conclude on the record before it that, as a matter of law, additional leave would have posed an undue hardship on Baxter.

In sum, the Court concludes the record is insufficient for the Court to grant summary judgment to either Baxter or Copenhaver regarding whether Copenhaver was qualified, with or without reasonable accommodation, to perform the essential functions of the job he held or sought in March of 2018.

## 2.      Retaliation

Separate from the discrimination claim, Copenhaver seeks summary judgment on his claim of retaliation. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) that he engaged in or was engaging in activity protected by the ADA, (2) the employer subjected him to an adverse employment decision, and (3) that there was a causal link between the protected activity and the employer's action. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000), *vacated sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)); *Wells v. Skynet Digital, LLC*, No. 4:14-CV-00450-BLW, 2016 WL 2755331, at *5 (D. Idaho May 11, 2016).

Once a prima facie case is established, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions; if the employer meets its burden, the plaintiff must then raise a triable issue of material fact as to whether the employer's reason was pretextual. *Wells*, 2016 WL 2755331, at *5 (citing *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004)). To satisfy the burden for pretext, the plaintiff

**MEMORANDUM DECISION AND ORDER  - 23**

must "produce enough evidence to allow a reasonable factfinder to conclude either: (a) that the alleged reason for the discharge was false; or (b) that the true reason for [his] discharge was a discriminatory one." *White v. Twin Falls Cty*., No. 1-14-CV-00102-EJL-REB, 2016 WL 1275594, at *7 (D. Idaho Mar. 31, 2016) (quoting *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 918 (9th Cir. 1996)); *see also Kotewa v. Living Indep. Network Corp*., No. CV05-426-S-EJL, 2007 WL 433544, at *10 (D. Idaho Feb. 2, 2007) ("Plaintiff has two ways to establish the employer's explanation for firing [him] was actually a pretext for retaliation: directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.").

Baxter does not present facts or argument disputing Copenhaver's assertion that he engaged in a protected activity when he requested an accommodation on March 19, 2018, to enable his return to work. Copenhaver Aff. ¶ 26 – 29, Ex. 7. (Dkt 44-3 at 8 – 9, 34.)[12] There is also no dispute that Baxter, by letter dated March 21, 2018, terminated Copenhaver's employment. (Dkt. 44-3 at 38.) And finally, Copenhaver has presented facts establishing the requisite causal link. The temporal proximity of an adverse employment action and a request for reasonable accommodation is sufficient to establish a causal connection. *Barnett*, 228 F.3d at 1121. Copenhaver testified that he contacted his supervisors on Monday, March 19, 2018, to inquire about returning to work, and he

---

[12] Baxter did not concede in its opening brief that Copenhaver engaged in protected activity, asserting an argument "assuming Copenhaver engaged in protected activity…." (Dkt. 42-1 at 16.) However, in response to Copenhaver's assertion that he did engage in protected activity on March 19, 2018, Baxter offered no facts or argument in rebuttal. (Dkt. 44-1 at 9; Dkt. 46 at 12 – 13.)

received a termination letter, dated March 21, 2018, on Friday, March 23, 2018. (Dkt. 42-4 at 21 – 22; Dkt. 42-4.) When adverse employment decisions closely follow a protected activity, retaliatory intent may be inferred. *Pardi v. Kaiser Found. Hosps*., 389 F.3d 840, 850 (9th Cir. 2004).

But, Baxter contends it terminated Copenhaver's employment for a legitimate, non-discriminatory reason— Copenhaver could not perform the essential functions of his position. Copenhaver disputes this assertion, relying upon the evidence discussed above that supports his claim that Baxter failed to engage in the interactive process and did not consider reasonable accommodations. There is also evidence in the record that Baxter hired an individual to replace Copenhaver, effective in February of 2018. Although contested, the evidence is sufficient at this stage to infer a retaliatory motive.

 The Court finds there are genuine disputes of fact whether Copenhaver's employment was terminated for a legitimate, non-retaliatory and non-pretextual reason. Baxter's March 21, 2018 letter of termination acknowledges Copenhaver's request to return to work, and his treatment provider's opinion that he be released to work on light duty. (Dkt 44-3 at 38.) The letter states simply that, "[a]fter evaluation of your light duty restrictions we would not be able to accommodate the restrictions. We also understand that you do not have a required DOT medical card which is a requirement to do the essential functions of the Service Specialist/Driver position."

The evidence supporting these two reasons offered by Baxter is disputed, as discussed in section 2, above. Whether Baxter sufficiently engaged in the interactive process to accommodate Copenhaver's request to return to "light duty" work is in

dispute. Further, Baxter's contention that the accommodations it considered would have imposed an undue hardship is also in dispute. For these reasons, the Court finds genuine issues of material fact exist, precluding summary judgment on Copenhaver's claim of retaliation under the ADA.

### 4.   Mitigation

Baxter asserts that, even if the Court cannot decide liability under the ADA as a matter of law, Baxter is entitled to judgment on the issue of damages, because Copenhaver failed to mitigate them. A plaintiff must attempt to mitigate damages by exercising reasonable care and diligence in seeking alternative employment after termination. *Jackson v. Shell Oil Co*., 702 F.2d 197, 201 (9th Cir. 1983). The defendant bears the burden of showing that there were suitable positions available and that the plaintiff failed to use reasonable care in seeking them. *Id*. at 202. *Cassino v. Reichhold Chemicals, Inc*., 817 F.2d 1338, 1345 (9th Cir. 1987). *See Jackson v. Shell Oil Co*., 702 F.2d 197, 202 (9th Cir.1983) (reasonable diligence shown by at least one formal job application and the procurement of a temporary two-month job during a two year period of unemployment) (citation and quotation marks omitted). Additionally, an employee may be precluded from recovering back pay as of the date he stopped applying for comparable jobs. *Callow v. Riverview Marina, Inc*., No. CIV. 03-129-S-BLW, 2006 WL 1075454, at *3 (D. Idaho Apr. 20, 2006).

Baxter contends that, if Copenhaver's ADA claim survives summary judgment, he should not be entitled to any economic damages (back or front pay) because he failed to look for comparable jobs after the termination of his employment. Baxter contends

Copenhaver was employable as a truck driver; there was a nationwide driver shortage (Baxter itself had 20 open driver positions around the country); and Copenhaver did nothing to secure suitable alternate employment, instead deciding to pursue a career path as a screenwriter, for which he received no income.

However, Baxter acknowledges Copenhaver worked as a Lyft driver and netted approximately $4,000 per month, about the same as his pay when working for Baxter. Copenhaver testified that, when his employment was terminated effective March 26, 2018, he applied for unemployment benefits and began looking for work. (Dkt. 42-4 at 28.) He looked for work for two months, and then decided to change his career by enrolling in classes to become a screen writer. Copenhaver Depo. at 103. (Dkt. 42-4 at 28.)[13] He obtained a job as a driver with Lyft in or about August or September of 2019 in Portland, Oregon. Copenhaver Depo. at 104, 108 – 109. (Dkt. 42-4 at 28 – 29.) Then, however, the pandemic and the March 2020 declaration of emergency associated with the same caused a drop in work and Copenhaver returned to Boise. Copenhaver Depo. at 110. (Dkt. 42-4 at 29 – 30.) Copenhaver is currently employed by the Boise-Winnemucca Stage Lines as a bus driver. Copenhaver Aff. ¶ 48. (Dkt. 44-3 at 14.)

The Court cannot conclude on the record before it that, as a matter of law, Copenhaver failed to mitigate his damages. The Court finds genuine issues of material fact exist concerning whether Copenhaver adequately mitigated the damages he seeks under his ADA claims in this lawsuit.

---

[13] Copenhaver has a college degree, and testified he has been a writer for most of his adult life. Copenhaver Depo. at 87. (Dkt. 42-4 at 24.)

**MEMORANDUM DECISION AND ORDER  - 27**

## CONCLUSION

Whatever the ultimate success of Copenhaver's ADA claim may be on the merits, the Court concludes there are disputed issues of material fact which preclude the Court from entering judgment as a matter of law in favor of either party.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. 42) is **DENIED**.

2) Plaintiff's Motion for Summary Judgment (Dkt. 44) is **DENIED**.

3) The parties are to meet and confer, and provide a status report to the Court by **February 5, 2021**, regarding further proceedings in this case, including potential trial dates. The Court will conduct a telephonic status conference with the parties on **February 17, 2021, at 10:30 a.m.,** for the purpose of discussing the same with the parties. A separate notice of hearing with the Court's teleconference instructions is forthcoming.

DATED: January 5, 2021

Honorable Candy W. Dale
United States Magistrate Judge